## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| IN THE MATTER OF ) | |
| THE GUARDIANSHIP OF ) | No. 2:11 CV 140 |
| MARLENE H. NEELY, ADULT. ) | |

### OPINION and ORDER

This matter arose as a "Petition to Recover Assets" filed in the Probate Division of the Lake County, Indiana, Circuit Court, by Martha Wing, as the guardian ("the Guardian") on behalf of Marlene H. Neely ("Marlene"). The assets are securities and cash held in an account by Edward D. Jones & Co., L.P. ("Edward Jones"). The record owners of that account are Calder James Neely and Spencer Michael Neely ("the Nephews").[1] The Nephews removed the case to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. The Guardian has moved to remand the case to the Lake County Probate Court, and for an award of attorney's fees and costs incurred as the result of the removal. (DE # 10, # 11.)

For the purpose of opposing the motion to remand only, the Nephews admit the truth of the factual allegations in the Petition to Recover Assets. The court uses those allegations to briefly summarize the dispute, and the parties' positions.

Marlene was married to Thomas W. Neely ("Tom"). Marlene and Tom were childless. In 1995 Marlene and Tom opened a joint account at Edward Jones, and both contributed to it. In April, 2010, Marlene, at Tom's request, signed a form changing the

---

[1] The Nephews are minors whose interests herein are represented by their parents and natural guardians, Kenneth R. Neely and Julie Risko Neely.

Edward Jones joint account to an account owned solely by Tom ("the New Account"). At that time, Marlene, who had suffered from renal insufficiency for many years, had been in complete renal failure and undergoing dialysis since 2003.

When the New Account was created in 2010, the assets transferred to it from Marlene and Tom's joint account totaled nearly $830,000.00. Immediately after the creation of the New Account, Tom designated his great nephews (the Nephews herein), as transfer on death ("TOD") beneficiaries. Tom had Marlene sign the TOD agreement, which was executed and delivered to Edward Jones. Two months later, on or about June 28, 2010, Tom and Marlene executed TOD deeds for two parcels of real estate they owned in Hobart, Indiana, in favor of the Nephews. The Guardian alleges that Marlene was incapacitated and not of sound mind at the time she transferred her interest in the joint account to Tom, giving his sole ownership, and when she executed the TOD agreements.

On or about July 26, 2010, Tom died from a self-inflicted gunshot wound.[2] Two months after that, the Guardian was appointed as Marlene's temporary guardian, and the appointment was made permanent on November 4, 2010. The Guardian asked Edward Jones to deliver to her, as part of Marlene's guardianship estate, all assets

---

[2] This event, from Edward Jones' perspective, would have caused ownership of the New Account to pass to the Nephews. This is not alleged in the Petition to Recover assets because the Guardian's position is that Marlene's transfer of ownership was void, so the New Account contained assets jointly belonging to her and became hers alone upon Tom's death.

which were transferred into the New Account. Edward Jones refused. The Guardian then filed the Petition to Recover assets in the Indiana probate court administering Marlene's guardianship proceeding, based on various theories as to why Marlene's execution of the change of ownership form and TOD agreements was invalid, making them void. The Guardian alleges that Marlene was, at the relevant times, of unsound mind and incapable of giving her consent to the transactions; that Tom as Marlene's fiduciary committed constructive fraud; Tom committed statutory and common-law fraud; Tom exercised undue influence over Marlene; and Tom unlawfully intended and attempted to defeat Marlene's spousal rights.

The Guardian has moved to remand the case to state court for three separate reasons. First, because it falls within the judicially-created "probate exception" to federal jurisdiction. Second, because the Petition to Recover Assets is a part of the state-court guardianship proceeding, and not an independent action which can be removed by itself. Third, because Edward Jones has not joined in the Petition for removal. A great deal could be written about all three of these issues, particularly the first, the probate exception. This discussion would largely be of academic interest, however, and the basis of the court's reasoning can, and will, be set out in very brief terms.

First, the probate exception. Federal courts have no jurisdiction to probate a will or administer an estate. *Markham v. Allen*, 326 U.S. 490, 494 (1946). Over the years after the exception was first recognized nearly two hundred years ago, it became

expansively interpreted, with courts holding that matters ancillary to the probate proceeding which would ordinarily be dealt with by the probate court come within the exception. *See, e.g.*, *Mangieri v. Mangieri*, 226 F.3d 1, 2-3 (1st Cir. 2000). *Markham* was an attempt to curtail that expansiveness. *Marshall v. Marshall*, 547 U.S. 293, 299 (2006). However, as shown by the date *Mangieri* was decided, after *Markham* courts remained confused by the exception's scope. In *Marshall* the Court returned to the subject, clarifying *Markham* and reversing the Ninth Circuit's "sweeping extension" of the exception to include "any 'probate related matter.'" 547 U.S. at 299. In *Marshall* the Court explained:

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.

*Id*. at 311-12.

Boiling the parties' arguments here down to one sentence, their disagreement is over whether the property—the *res*—at issue, is in the "custody" of the state probate court. As the Guardian sees it, the state probate court should:

> determine whether the Edward Jones account contains funds that belong in the guardianship estate and should be administered by the guardian. . . . [The Nephews] seek to divest the Guardianship Court of that uniquely state role over a *res* that is already in front of the state court.

(DE # 9 at 4.) As the court understands the Guardian's argument from her brief as a whole, by *res* she is referring to the estate as whole, and an assertion that the funds in the Edward Jones account are properly part of that estate and so essentially in the state

4

court's constructive possession. The Nephews' opposing argument views the Edward Jones account as not being a part of the estate/*res*:

> the State Court is not already exercising in rem jurisdiction over the property in question. The mere fact that the Guardian has filed a petition to recover property is evidence that the property is not already in control of the Guardian or the State Court. The very purpose of the Petition is to acquire control.

(DE # 13 at 6.)

The Nephews are on the right track: "federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Markham*, 326 U.S. at 494 (internal quotation marks omitted). In the court's view, it is the completion of this thought in *Markham* that dictates the result, but a point which the Guardian and the Nephews have overlooked:

> [W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession *save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court*.

*Id*. (emphasis added.) This portion of *Markham* was quoted with approval in *Marshall*, as the basis for the Court's explanation that while the probate exception prevents federal courts from exercising their jurisdiction "to dispose of property that is in the

5

custody of a state probate court . . it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." 547 U.S. at 312.

In short, adjudicating the rights to property—even if that property is within the state court's possession, is not the same as asserting control over the estate, and disposing its property, and a federal court properly exercising its jurisdiction *can* interfere with the administration of an estate, but only to the extent that its adjudication of rights to property is a judgment which must be afforded recognition by the state court. Therefore, the probate exception does not require remand of this action to state court.

The Guardian's second argument is an offshoot of the first. The Guardian argues that her petition to recover assets is not an independent action, but instead merely a "supplementary and ancillary part of the guardianship administration." (DE # 9 at 6.) Thus, in addition to the probate exception, because only entire suits can be removed, not parts thereof, *Federal Savings and Loan Ins. Corp. v. Quinn*, 419 F.2d 1014, 1018 (7th Cir. 1969), the removal was improper.

There are three reasons the court disagrees. First, there is no provision in the portions of the Indiana probate code applicable to guardianships of protected persons establishing procedures for such a supplemental action,[3] suggesting that it is an

---

[3] The Guardian asserts that this proceeding amounts to one seeking an "amendatory or supplementary" order under Ind. Code § 29-3-9-8, but has cited no

independent civil action being brought by the Guardian. In fact, in the provisions of the probate code enumerating the powers of the guardian to pursue his or her responsibilities, the Guardian is given all of the powers conferred upon trustees by Ind. Code § 29-1-7.5-3. Ind. Code. § 29-3-8-4(10). Personal representatives have the power, "without order of the court," to employ attorneys and act on their recommendations, and "[r]elease, assign, settle, compromise, or contest" claims "in favor of or against the estate for the protection of the estate." Ind. Code § 29-1-7.5-3(23), (24). Thus, the Guardian has the power to retain an attorney to pursue a private civil action outside of the probate proceeding.

Second, this interpretation is consistent with another provision of the probate code dealing with the administration of decedents' estates, authorizing personal representatives to pursue property asserted to belong to the estate, but as to "parties claiming an interest adverse to the estate, such procedure . . . is an independent proceeding" and not a part of the probate *in rem* proceeding. Ind. Code § 29-1-13-10(a). Although this provision does not specifically apply to guardians, by analogy, since

---

authority supporting this proposition. In conjunction with its internal reference to Ind. Code § 29-3-8-8, this appears to be related to expanding or limiting the powers of the Guardian, rather than authority for a supplemental action within the probate proceeding to recover estate assets.

guardians are granted personal representatives' powers, Ind. Code. § 29-3-8-4(10), the present proceeding should be viewed as independent.[4]

Third, and most important, state law characterization does not control; whether the proceeding is independent is a federal question. *Quinn*, 419 F.2d at 1018. Thus, even if the state considers the procedure ancillary supplemental—for example, a garnishment proceeding—if the procedure used by the state allows adversarial litigation of disputed issues, involving new parties and new issues not already determined in a prior state proceeding, the action is independent and removable. *See Harding Hospital v. Sovchen*, 868 F. Supp. 1074, 1077-78 (S.D. In. 1994). That fits the present circumstances to a T, and so the petition to recover assets is an independent, and removable action.

Last, the Guardian argues that this case was improperly removed because Edward Jones is a necessary party-defendant, did not consent to removal, and removal requires defendants' unanimous consent. 28 U.S.C. § 1441(a); *Pettitt v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010). The consent of nominal or formal parties is unnecessary, however. *Ryan v. State Bd. of Elections*, 661 F.2d 1130, 1133-34 (7th Cir. 1981). A

---

[4] In her reply, the Guardian argues that omission of a similar provision for protected persons should be viewed as purposive, indicative of legislative intent to treat the proceeding as part of the estate matter itself. The court is not persuaded, and the omission seems more likely due to oversight. There is no reason to think that the legislature would presume that probate courts have special expertise to manage the assets of the estates of a protected persons, but lack that expertise with respect to the estates of decedents.

defendant is a nominal party if its role in the suit is as nothing more than a depositary or stakeholder. *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991); *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349,* 427 F.2d 325, 327 (5th Cir. 1970). That is Edward Jones' role here, and so its consent to the removal was not necessary.

For the foregoing reasons, the Guardian's motion to remand (DE # 10) and for attorney's fees and costs (DE # 11) are both **DENIED**. The Nephews' motion for leave to file sur-reply (DE # 15) is **DENIED,** because consideration of the sur-reply was not necessary.

**SO ORDERED.**

Date: March 9, 2012

    s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT