**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| IN RE THE GUARDIANSHIP OF ) | |
| MARLENE H. NEELY, adult. ) | CAUSE NO.: 2:11-CV-140-JTM-PRC |
| ) | |

**OPINION AND ORDER**

This matter is before the Court on a Motion to Disqualify Plaintiff's Attorneys [DE 20], filed by Defendants Calder James Neely and Spencer Michael Neely, minors represented by their parents and natural guardians, Kenneth R. Neely and Julie Risko Neely, (the "Nephews") on March 20, 2012.

**FACTUAL AND PROCEDURAL BACKGROUND**

Marlene Neely ("Marlene") is the surviving spouse of Thomas Neely ("Tom"), and is represented in this action by Martha Wing, Guardian of Marlene's Estate. On March 10, 2011, the Guardian filed a Petition to Recover Assets in Lake County Circuit Court, Crown Point, Indiana, that was removed to this Court on April 18, 2011. The Petition alleges that on April 26, 2010, shortly before his death, Tom closed an account owned jointly with Marlene, created a new account with the assets, and designated the Nephews as transfer on death beneficiaries. The Guardian alleges that Tom accomplished this closure and execution through fraud, constructive fraud, and undue influence over Marlene, who was incompetent at the time. The action seeks to recover the account proceeds for Marlene's Estate.

The Guardian, petitioner in this action, is represented by attorneys Barnes & Thornburg, LLP. The same attorneys represent Martha Wing as Personal Representative for Tom's Estate. In the instant Motion, the Nephews request that the Court disqualify the attorneys from their representation of the Guardian in this action, arguing that there is a conflict of interest between their

representation of the Guardian in this action and their representation of the Personal Representative for Tom's Estate. On April 13, 2012, the Guardian filed a response to the Motion, and the Nephews filed a reply on April 26, 2012. On May 2, 2012, the Court held a hearing on the instant Motion.

**ANALYSIS**

The Seventh Circuit has cautioned that disqualification is a prophylactic device employed to protect the attorney-client relationship and is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Cromley v. Bd. of Ed. of Lockport Twp. High Sch. Dist. 205*, 17 F.3d 1059, 1066 (7th Cir. 1994) (quoting *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)). Motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722. However, the Seventh Circuit has instructed courts to resolve doubts in favor of disqualification. *See Exterior Sys., Inc. v. Noble Composites, Inc.*, 175 F. Supp. 2d 1112, 1115 (N.D. Ind. 2001) (citing *United States v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990)). A district court possesses "broad discretion" in determining whether disqualification is required in a particular case. *Cardenas v. Benter Farms*, No. IP 98-1067-C T/G, 2001 WL 292576, at *1 (S.D. Ind. Feb. 7, 2001) (quoting *Whiting Corp. v. White Mach. Corp.*, 567 F.2d 713, 715 (7th Cir. 1977)). The party seeking disqualification bears the burden of showing facts requiring disqualification. *Id.*

The Local Rules of this Court provide that the Rules of Professional Conduct as adopted by the Indiana Supreme Court, along with the Standards for Professional Conduct adopted by the Seventh Circuit, provide the standard of conduct for those practicing in this court. *See* N.D. Ind. Local Rule 83-5(e).

The Nephews argue that there is a concurrent conflict of interest in this case because the

2

interests of the Guardian of Marlene's Estate are adverse to the interests of the Personal Representative for Tom's Estate. The Guardian argues that there is no conflict of interest and that the Nephews have no standing to raise an alleged conflict.

1.   **Standing**

The Guardian argues that, even if there is some kind of conflict in the representation of both the Guardian and Tom's Estate, the Nephews do not have standing to request disqualification because they have not suffered any injury or harm due to that representation. Furthermore, the Guardian argues that a party cannot deprive his or her opponent of chosen counsel if, as here, there is no relationship to the party's own rights and interests.

Neither party fully develops their argument about standing. The Nephews argue that the single case cited by the Guardian is inapplicable, but do not specifically identify any injury that they have suffered as a result of the representation. The only harm they identify in their briefing is their argument that they have suffered or will suffer prejudice because they do not have the same access to Tom's records as the attorneys do in their role as counsel for the Personal Representative for Tom's Estate, an argument addressed below. Given the lack of developed arguments on the question of standing, the Court will proceed to the merits of the arguments, but does not in so doing conclude that the Nephews do have standing to challenge the representation of the Guardian and Representative.

2.   **Concurrent Conflict of Interest**

The Nephews argue that counsel's representation of Tom's Estate is equivalent to representation of Tom and therefore in conflict to the representation of the Guardian. They argue that this suit is, in essence, a suit by Marlene against Tom since the cause of action arose while Tom

3

was alive, making the interests of the Guardian, as representative of Marlene, adverse to those of Tom's Estate and thereby creating a direct conflict that cannot be waived. The Guardian argues that there is no actual conflict of interest because counsel for Tom's Estate and the Guardian have never represented the Nephews, Tom's Estate is not a party to the action, and the account at issue is a non-probate asset that will never become part of Tom's Estate.

Indiana Rule of Professional Conduct 1.7 provides:

> A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Ind. R. Prof'l Cond. 1.7(a). The Nephews argue that the representation of Tom's Estate is directly adverse to the representation of the Guardian, creating a concurrent conflict of interest. They argue that because Marlene could have filed an action against Tom while he was still alive based on essentially the same acts as is this suit and because the allegations would also support an action by the Guardian against Tom's Estate, the representation of Tom's Estate and the Guardian are directly adverse.

The Guardian argues that the current action is against neither Tom nor Tom's Estate. She points out that counsel for the Guardian do not represent Tom in the state probate proceeding nor are they responsible for defending against any of his actions, but that Tom's Estate is merely a legal entity created for distribution of Tom's assets, with no relationship to any wrongful acts he may have performed. In Indiana, "[t]he personal representative of the estate of a deceased is to preserve the assets of the estate in order to distribute the assets of the estate completely and efficiently for the

4

benefit of creditors and the deceased's heirs and devisees." *In re Guardianship of J.Y.*, 942 N.E.2d 148, 152 (Ind. Ct. App. 2011) (citing *Inlow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385, 394-95 (Ind. Ct. App. 2003)). The Guardian argues that Tom's Estate has no stake in the outcome of the instant action, since the property at issue is not and never will be an asset to be distributed in the state probate proceedings.

Even if the Court were to be convinced that there is an actual conflict between the Guardian and Tom's Estate, a concurrent conflict does not preclude representation if

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

Ind. R. Prof'l Cond. 1.7(b). The Guardian argues that to the extent that there is any conflict, it has been waived, since counsel are not representing two parties in the same litigation and the attorneys believe they can competently represent both the Guardian and Tom's Estate.

The Court agrees with the Guardian that there does not appear to be any conflict between counsel's current representation of the Guardian and any other current or prior client. There is no obvious conflict between the interests of the Guardian and the legal entity of Tom's Estate since Tom's Estate is not now a party to the proceedings and the account at issue in this case will not be an asset that is ever part of Tom's Estate. Furthermore, even to the extent that this cause of action could be conceived of as an action against Tom, counsel for the Guardian do not and never have represented Tom. There is no assertion of a claim by one client against another client represented by the same counsel in this litigation; counsel believe they can represent both the Guardian and

Tom's Estate competently and diligently and the Nephews have not argued that the representation is prohibited by any law. Accordingly, the Court concludes that there is no conflict of interest between two current clients and, to the extent there is or could be any conflict in the future, it has been waived by the clients.

**3.      Prior Representation Precluding Current Representation**

The Nephews also argue that they have suffered prejudice because counsel for the Guardian has access to confidential information and records. They urge the Court to consider this situation to be analogous to a situation involving prior representation that precludes a present representation as prohibited by Indiana Rule of Professional Conduct 1.9(c).

The Rule states:

> (c)     A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> (1)     use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> (2)     reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Ind. R. Prof'l Cond. 1.9(c). In the Seventh Circuit, there is a three-step process for determining whether an attorney should be disqualified because of prior representation.

> First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make the disqualification proper.

*Cromley*, 17 F.3d 1059, 1064 (7th Cir. Ill. 1994) (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)).

The Nephews argue that counsel's current representation of Tom's Estate is the equivalent of prior representation of Tom since Tom's Estate now controls Tom's personal records and, if the Guardian succeeds in this action to recover funds from the account, it will be like taking from Tom property previously transferred to him. The Guardian argues that not only has counsel never represented Tom, but the "confidential" information at issue in this case is not privileged attorney-client communication as contemplated by the Rules of Professional Conduct and the three-step process in the Seventh Circuit. Instead, the "confidential" information is simply financial documents that are both obtainable through discovery and, at least in large part, equally the property of Marlene and her Guardian such that counsel have obtained no special access through representation of Tom's Estate.

The substantial relationship test, the first step in the three-step process utilized in this Circuit, is intended (1) to prevent disclosure of client confidences; (2) to protect a client's interest in the loyalty of counsel; and (3) to prevent the appearance of conflict of interest that is difficult to dispel in the eyes of the public, the bench, and the bar. *Exterior Sys.*, 175 F. Supp. 2d at 1116 (citing *Analytica, Inc. v. NPD Research Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983)). The Court agrees with the Guardian that in this case, counsel for the Guardian has received no client confidences from Tom and owes no loyalty to Tom. Instead, counsel represents Tom's Estate, a separate entity from the now-deceased Tom, and counsel are not the recipients of any attorney-client communication or other documents that they would not otherwise have access to as representatives of the Guardian or through discovery in this matter. The documents are also available to the Nephews through

7

discovery. It is too much of a stretch to find both that there is complete privity between Tom and Tom's Estate and that representation by counsel of the Guardian disadvantages either of them as contemplated by Indiana Rule of Professional Conduct 1.9. There are no apparent client confidences or conflicts of loyalty that arise out of counsel's representation of both Tom's Estate and Tom, and there do not appear to be any documents that are relevant to the case and completely unavailable to the Nephews as a result of the representation. In short, counsel are not harming Tom's Estate by representing the Guardian, and are not causing any apparent prejudice to the Nephews.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion to Disqualify Plaintiff's Attorneys [DE 20].

SO ORDERED this 14th day of May, 2012.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record